CIVIL DISTRICT COURT FOR THE OF ORLEANS

STATE OF LOUISIANA

NO. 2025 - 01186          SECTION          SECTION 8

DIVISION

DORIS PILLETTE

VERSUS

ITG BRANDS, LLC et al.

FILED: _____          _____
                                              DEPUTY CLERK

PETITION FOR DAMAGES

TO THE HONORABLE CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS,
STATE OF LOUISIANA, AND THE JUDGES THEREOF:

1.    Made Plaintiff herein is:

      **DORIS PILLETTE,** an adult resident and domiciliary of St. James Parish,

Vacherie, LA.

2.    Made Defendants herein are:

      A.    **PREMISE OWNER/EMPLOYER/ TAKE HOME DEFENDANTS**

            1.    **SHELL OIL COMPANY**
                  This defendant is being sued for negligence/premise/strict liability/ take
                  home liability.

            2.    **TEXACO, INC.**
                  This defendant is being sued for negligence/premise/strict liability/ take
                  home liability.

            3.    **EIDP, INC. (f/k/a as E.I. DuPont De Nemours and Company)**
                  This defendant is being sued for negligence/premise/strict liability/ take
                  home liability.

            4.    **EXXON MOBIL CORPORATION**
                  This defendant is being sued for negligence/premise/strict liability/ take
                  home liability.

            5.    **AIR PRODUCTS AND CHEMICALS, INC.**
                  This defendant is being sued for negligence/premise/strict liability/ take
                  home liability.

            6.    **RUBICON, LLC**
                  This defendant is being sued for negligence/premise/strict liability/ take
                  home liability.

            7.    **ENTERGY LOUISIANA, LLC**
                  This defendant is being sued for negligence/premise/strict liability/take
                  home liability.

EXHIBIT A

8. **LEGACY VULCAN, LLC**
This defendant is being sued for negligence/premise/strict liability/ take home liability.

9. **DOW CHEMICAL COMPANY**
This defendant is being sued for negligence/premise/strict liability/ take home liability.

10. **PHARMACIA, LLC**
This defendant is being sued for negligence/premise/strict liability/ take home liability.

11. **TURNER INDUSTRIES GROUP, LLC (f/k/a Turner Industries Holding Company, LLC, f/k/a Nichols Construction Company, LLC, f/k/a National Maintenance Company, f/k/a International Maintenance Company)**
This defendant is being sued for negligence/premise/strict liability/ take home liability.

B. **SUPPLIER/MANUFACTURER/SELLER/CONTRACTOR DEFENDANTS**

12. **GOULDS PUMPS (IPG) INC.**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

13. **RILEY POWER INC.**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

14. **ZURN INDUSTRIES LLC**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

15. **CLEAVER-BROOKS, INC. (f/k/a Aqua-Chem, Inc. )**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

16. **ANCO INSULATIONS, INC.**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

17. **TAYLOR SEIDENBACH, INC**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

18. **EAGLE, INC.**
This defendant is being sued as a seller/supplier/contractor defendant.

19. **UNION CARBIDE CORPORATION**
This defendant is being sued as a seller/supplier/contractor/ manufacturer defendant.

20. **R. J. REYNOLDS TOBACCO COMPANY**
This defendant is being sued as a seller/supplier/product/ manufacturer/ tobacco defendant

21.  **ITG BRANDS, LLC**
This defendant is being sued as a seller/supplier/product/manufacturer/ tobacco defendant.

3.     Doris Pillette was diagnosed with asbestos/secondhand tobacco-related lung cancer on or about October 2024 which was caused by and a consequence of her exposure to asbestos and secondhand cigarette smoke as set forth herein. Doris Pillette was never a smoker. As a direct and proximate result of the delictual conduct of the defendants, Plaintiff, Doris Pillette, has recently contracted asbestos/secondhand tobacco-related lung cancer and has suffered physically, financially, mentally, and emotionally.

4.     Doris Pillette's lung cancer was caused by: (1) secondhand cigarette smoke from her ex-husband, Norris Pillette, resulting from his addiction to nicotine in cigarettes manufactured and/or sold by RJ Reynolds and ITG Brand, LLC, namely the Kool Brand of cigarettes; and (2) take home exposure to asbestos from her ex-husband Norris Pillette's exposure through the use of products manufactured and/or sold by Defendants. All of Doris Pillette's asbestos exposures and the overwhelming majority of Doris Pillette's secondhand cigarette smoke exposure occurred in Louisiana, including Orleans Parish. Doris Pillette never smoked cigarettes herself but her ex-husband, Norris Pillette, would regularly smoke Kool's in their shared home and her vicinity.

5.     Asbestos exposure and secondhand cigarette inhalation are both well-established causes of lung cancer. Cigarette smoking and asbestos exposure act "synergistically" and act in combination to cause lung cancer in persons, such as Doris Pillette, who were regularly exposed to secondhand smoke and asbestos through her spouse's work. Both secondhand cigarettes smoking inhalation and asbestos exposure were substantial causes of Ms. Pillette's lung cancer.

6.     Kool cigarettes had advertisements in the 1960's era onwards with campaign by the tobacco industry, including ITG and its predecessors, which aggressively marketed highly addictive menthol cigarettes to African Americans for decades. Some African American publications even became dependent upon tobacco advertising to stay afloat, and marketers identified people in Black communities, such as barbers, to give free samples to clients to help build a new market.

7.     The campaigns were largely successful: between 1980 and 2018, 1.5 million African Americans began smoking menthols, and 157,000 African Americans died prematurely from smoking-related deaths. In 2020, about 81% of Black smokers smoked menthol cigarettes, compared with 34% of white smokers.

8.    Those who start smoking with menthol cigarettes, such as Norris Pillette, are more likely to continue smoking through adulthood. Menthol cigarettes are considered more addictive than normal cigarettes because they enhance nicotine's effect on the brain.

9.    The defendants, Eagle, Inc. and Taylor-Seidenbach, Inc., are domestic corporations with their registered offices located in Orleans Parish. Plaintiff was exposed to products distributed and installed by the above-referenced defendants at or from the work sites in Paragraph 2. Plaintiff specifically alleges that these products, in combination with other asbestos-containing products, caused her asbestos and secondhand tobacco-related injuries.

10.   Orleans Parish is a proper venue for this matter pursuant to Louisiana Code of Civil Procedure Article 42(2) because the Defendants Eagle, Inc. and Taylor-Seidenbach are domestic corporations licensed to do business in this State and have designated as its primary business office and/or primary place of business in Louisiana as Orleans Parish. The defendant, Air Product and Chemicals, Inc. are foreign corporations with their principal place of business located in this Parish.

11.   Orleans Parish is a proper venue for this matter pursuant to La. Stat. Ann. §22:1269B(1) because events, accident or injury occurred or in Orleans Parish. Orleans Parish is a proper venue for this matter pursuant to La. C. Civ. Proc. Art. 74 because Orleans Parish is where wrongful conduct occurred or where the damages were sustained. Specifically on several occasions, Norris Pillette smoked cigarettes in the vehicle Doris Pillette was riding in with him.

12.   The damages sought by the Plaintiff, exclusive of interest and costs, exceed the minimum jurisdictional limits of the court.

13.   The plaintiff specifically disclaims any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in, or on the grounds of, a federal enclave. Plaintiff also disclaims any cause of action or recovery for any injuries resulting from any exposure to asbestos dust caused by any conduct, action, acts or omissions of any and all federal officers, or committed at the direction of an officer of the United States Government.

14.   Doris Pillette was exposed to injurious levels of asbestos through her employment as a at DuPont in Reserve, Louisiana from 1980-1985 as a process operator. During her employment, Doris Pillette suffered direct exposures to asbestos-containing products, as well as bystander exposures to asbestos-containing products when working in close proximity to other employees and/or contractors manipulating asbestos-containing products which created dust that Petitioner

was exposed to.

15.    Additionally, Plaintiff was exposed to asbestos from the work of her ex-husband, Norris Pillette who was employed by Avondale as a boilermaker from 1972- 1975 and for various employers as a pipefitter/boilermaker from 1975-1990, and performed work at various sites in and around the State of Louisiana, including but not limited to:

- Rubicon in Geismar, Louisiana

- Texaco in Convent, Louisiana

- Exxon Mobil in Baton Rouge, Louisiana

- Shell in Norco, Louisiana

- Shell in Geismar, Louisiana

- DuPont in Reserve, Louisiana

- Vulcan in Geismar, Louisiana

- Air Products in New Orleans, Louisiana

- Waterford III in Killona, Louisiana

- Dow in Iberville, Louisiana

- Monsanto in Luling, Louisiana

Throughout his employment, Norris Pillette used, handled, and/or was in the vicinity of others using and/or handling asbestos and/or asbestos-containing products, and dangerously high levels of asbestos fibers escaped into the ambient air of the workplace, resulting in Norris Pillette's exposure to such asbestos and/or asbestos-containing products that subsequently exposed Doris Pillette to same.

16.    From Doris Pillette's marriage in 1975 to their divorce in 1997, Doris Pillette was exposed to the asbestos fibers through interaction with her then husband and from her then husband's vehicle and clothing, which he wore home from work and that she subsequently laundered.

17.    In connection with the Plaintiff's exposure to asbestos from her work and her ex-husband's work at the sites identified in Paragraph 10, from approximately 1972-1990 and through her work and her personal contact with her ex-husband and from the dust she breathed while laundering her ex-husband's clothes, Plaintiff suffered exposure to asbestos and asbestos-containing products designed, manufactured, sold, supplied, used and/or maintained at these sites by the Defendants.

18.    Before and during Doris Pillette's exposure periods, each of the defendants designed, tested, evaluated, manufactured, packaged, furnished, stored, handled, transported, installed, used,

supplied and/or sold asbestos-containing products for use at, including but not limited to, each of the facilities listed in Paragraph 10 from which the Plaintiff was exposed to asbestos-containing products, materials, insulation, and products that contained fibrous, incombustible, chemical-resistant mineral substances commonly called "asbestos".

19.    When inhaled or otherwise ingested, asbestos causes irreparable and progressive lung damage that can manifest itself as asbestos-related pleural disease, asbestosis, mesothelioma, pulmonary and bronchogenic carcinoma, gastrointestinal cancer, cardiac problems, other lung diseases, pneumoconiosis, and various other injuries.

20.    Each of the Defendants knew or should have known, through industry and medical studies the existence of which was unknown to the Plaintiff, of the health hazards inherent in the asbestos-containing products they were selling and/or using. Instead of warning the Plaintiff and the general public about these dangers, the Defendants ignored or concealed such information, or condoned such concealment, in order to sell or use asbestos or asbestos-containing products and avoid litigation by those who were injured from asbestos inhalation.

21.    As a direct and proximate result of having inhaled, ingested, or otherwise been exposed to asbestos as described above, Doris Pillette contracted lung cancer. Doris Pillette was diagnosed with asbestos/second hand tobacco- related lung cancer on or about October 2024. A cause of Doris Pillette's contraction of lung cancer was her asbestos exposure.

22.    Because of the latency period between exposure to asbestos and the onset of lung cancer and because of the concealment by some defendants of the causes and effects of exposure to asbestos, Plaintiff did not know, nor could she have reasonably known, that her injuries were caused by her asbestos exposure until recently, which occurred less than one year prior to the filing of the instant Petition for Damages. Further, Plaintiff only recently discovered her injuries, not more than one year preceding the filing of this Original Petition for Damages.

23.    In connection with her ex- husband's work at the aforementioned job sites, Doris Pillette was exposed to and inhaled or otherwise ingested significant quantities of asbestos, having neither knowledge or reason to believe that asbestos was dangerous.

## TOBACCO ALLEGATIONS

24.    Norris Pillette was born in 1952 and began smoking cigarettes as a teenager. When Mr. Pillette began smoking cigarettes there were no warnings regarding adverse health effects on cigarette packs or cigarette advertisements. In fact, Defendant's cigarette advertisements during

the relevant time hereto boasted and promoted the positive health effects of smoking to customers such as Mr. Pillette without any information disseminated about the deleterious effects of secondhand smoke exposure.

25.    Because Ms. Pillette was exposed to both the asbestos-containing products and tobacco products in combination from approximately 1972-2000, the substantive law at the time of her exposures governs this action.

26.    Plaintiff also avers that RJ Reynolds and ITG Brands, LLC. had a duty to disclose to the American public, including Norris Pillette and Doris Pillette, all material facts about the health hazards of secondhand smoke and of smoking cigarettes, including their highly addictive qualities. RJ Reynolds and ITG Brands, LLC owed a legal duty to disclose all material facts regarding the health effects of cigarette smoke exposure, which they knew, or in the exercise of ordinary care, should have known were deleterious and highly harmful to Doris Pillette's health and well-being. RJ Reynolds and ITG Brands, LLC also owed this legal duty to disclose material facts because they affirmatively undertook this duty by voluntarily and repeatedly communicating with the American public about smoking and its health effects, including addiction, as well as secondhand smoke effects, including lung cancer.

27.    RJ Reynolds and ITG Brands, LLC directly and through its trade associations, including but not limited to, the Tobacco Industry Research Committee (TIRC), Council for Tobacco Research (CTR) and the Tobacco Institute (TI) repeatedly made representations and statements, from the 1950s through the 2000s, about the safety of cigarettes and their effect on human health and the issue of nicotine addiction. RJ Reynolds and ITG Brands, LLC., both directly and through their trade associations, including but not limited to the TIRC, CTR and TI, from the 1950s through the 2000s, repeatedly and consistently made public statements, inter alia: (1) denying that cigarettes were hazardous; (2) denying that cigarettes caused lung cancer or any other serious illness; (3) denying that cigarettes contained any harmful ingredients; (4) denying that the ingredients of cigarettes included nicotine and other chemicals were manipulated to cause people to continue to smoke or initiate or sustain addiction; (5) denying that nicotine in cigarettes is addictive. RJ Reynolds and ITG Brands, LLC failed to timely and adequately warn Doris Pillette of the dangerous characteristics and serious health hazards associated with tobacco, much less of the health hazards associated with breathing secondhand smoke.

28.   RJ Reynolds and ITG Brands failed to place timely and adequate warnings to consumers and others, of the health hazards, including addiction, of smoking cigarettes or breathing secondhand smoke from cigarettes, on their tobacco products, on the containers of said products, and any and all packing of tobacco products sold by RJ Reynolds and ITG Brands prior to July 1, 1969.

29.   The first warning on RJ Reynolds or ITG Brand cigarettes regarding secondhand smoke did not appear until 2000, this was after Norris Pillette and Doris Pillette had divorced.

30.   As a proximate result of RJ Reynolds and ITG Brand's failure to exercise reasonable care, Doris Pillette developed lung cancer and other personal injuries from secondhand smoke exposure and Plaintiff is entitled to recover the damages sought in this complaint for Defendants' negligence.

31.   RJ Reynolds and ITG Brands had a duty to know the dangerous and hazardous qualities of its products. Doris Pillette was exposed to RJ Reynolds and ITG Brands hazardous products when Norris Pillette smoked Kool brand cigarettes in her breathing zone and vicinity from 1972-2000. Plaintiffs would show that the defective condition of these products as unreasonably dangerous to normal use, that cigarettes were in this defective condition when they were smoked by Norris Pillette, the tobacco defendant's cigarettes, in connection with Doris Pillette's take-home exposure to asbestos, caused her lung cancer, and RJ Reynolds and ITG Brands., was aware and could reasonably anticipate that the nicotine and other chemicals in their products would cause lung cancer when breathed secondhand by nonsmokers.

32.   RJ Reynolds and ITG Brands, and its predecessors, were engaged in the business of manufacturing and selling tobacco products, without substantial change in the condition in which they were sold, and were a producing cause of the illnesses, disabilities, and damages of Doris Pillette.

33.   RJ Reynolds and ITG Brands, cigarettes were hazardous to normal use, meaning all intended and foreseeable uses in which the consumer and others, thereby inhaling the tobacco, nicotine and chemicals into ones' lungs, such as Doris Pillette did on numerous occasions between 1972-200. Doris Pillette was unaware of these hazards and defects in RJ Reynolds and ITG Brand cigarettes which made them unsafe to be exposed to.

## GENERAL NEGLIGENCE ALLEGATIONS- ALL DEFENDANTS

34.     On information and belief, all of the Defendants identified in Paragraph 2 above were responsible to provide Doris Pillette and her ex-husband with warnings concerning hazardous conditions at their sites and/or their use of hazardous materials, and generally to provide Plaintiff, and her husband, with safe premises in order to protect life health, safety, and welfare of Plaintiff, and had the following responsibilities:

A.     To inspect, approve, and supervise the various premises for hazards and vices that may present a hazard to Doris Pillette and Norris Pillette;

B.     To see that proper safety rules were adopted, promulgated, and enforced concerning the use and handling of hazardous materials that may present harm to people on the premises;

C.     To see that workers performed their duties pertaining to their work in a proper, safe and workmanlike manner so as not to present an unreasonable risk of harm to the workers, as well as Plaintiff;

D.     To see that the Defendants and their employees used safe and sound principles and practices in their work involving the use and storage of hazardous materials;

E.     To make health and hygiene decisions on any and all questions regarding the use of respiratory protection devices involving the use and storage of hazardous materials;

F.     To keep abreast of state-of-the-art-knowledge, as it pertains to the dangers of asbestos inhalation, involving the use and storage of hazardous materials;

G.     To provide adequate warnings, safety equipment, ventilation, and breathing apparatus, where such was necessary, in order to prevent Plaintiff from being harmed by exposure to asbestos in the environment in which she was required to be present;

H.     To make certain that Doris Pillette and Norris Pillette were provided a safe environment, free from excess asbestos dust inhalation and operations free from excess asbestos dust;

I.     To comply with applicable state and federal regulations regulating exposure to asbestos, including but not limited to, those regulations regulating exposure to asbestos, including but not limited to, those regulations promulgated by the U.S.

Department of Labor pursuant to the Walsh/Healy Act and Occupational Safety and Health Act.

35.    Not only did Defendants have the duties and responsibilities set forth in the foregoing paragraph, but they did actually undertake on an operational basis to perform said duties and fulfill said responsibilities, and they negligently failed to carry out those undertakings and assumed duties in the manner asserted in the paragraph below, and on information and belief, Defendants knew of the dust laden atmosphere in which Norris Pillette was required to enter, and work, which was damaging and dangerous to Doris Pillette and any other family member coming into contact with Norris Pillette's work clothing, and each knew or should have known of the dangers to Norris Pillette's health posed by her ex-husband working in an atmosphere polluted with asbestos dust without proper protection or warnings. Plaintiff alleges that these Defendants knew or should have known that the lung cancer sustained by Plaintiff could have been avoided by the use of adequate ventilation, warnings, packaging and safety equipment.

36.    On information and belief, Defendants negligently failed in the performance of their responsibilities and/or actual undertakings to provide Doris Pillette and her ex- husband, Norris Pillette, with safe premises and operations in the following particulars:

A.    Failing to properly ventilate the area in which Norris Pillette was required to enter in connection with his work;

B.    Failing to warn or provide proper safety appliances, including but not limited to respirators, air-fed hoods, etc. for Doris Pillette and Norris Pillette;

C.    Failure to institute safety procedures and plans for the adequate protection of Doris Pillette and Norris Pillette;

D.    Failing to warn Doris Pillette and Norris Pillette of the dangers posed by the polluted atmosphere in which they were required to work including, but not limited to the risk of asbestosis, pleural disease, lung cancer, mesothelioma, other cancers, and the carcinogenic effect of the risk of lung cancer caused by asbestos exposure to persons from the handling and use of asbestos;

E.    Failing to enforce applicable safety rules after such rules were actually adopted;

F.    Failing to keep abreast of the scientific and engineering knowledge regarding the dangers of, and protection against, the occupational exposure to asbestos;

G.    Failing to properly supervise operations;

H.    Failing to provide proper and safe laundry services to workers;

I.    Failure to prevent workers from taking asbestos dust home on their clothes;

J.    Commencing and continuation of operations which were under their control and supervision when they knew or should have known that such operations caused Plaintiff and Plaintiff's ex-husband, to be exposed to asbestos dust, without protections;

K.    Failing to abide by applicable state and federal regulations regulating the premises' exposure to asbestos, including but not limited to, those regulations promulgated by the U. S. Department of Labor, pursuant to the Walsh/Healy Act and the Occupational Safety and Health Act;

L.    Failing to measure the levels of asbestos dust in the premises working environment.

37.    The negligence of these Defendants was a substantial factor and contributed in causing damages to Plaintiff.

## NEGLIGENCE AND STRICT LIABILITY AGAINST
## MANUFACTURER/SELLER/SUPPLIER/CONTRACTOR DEFENDANTS

38.    The Defendants identified in Paragraph 2B above as manufacturers, sellers, contractors and/or suppliers of asbestos products were engaged in or materially participated in the business of manufacturing, assisted in the manufacturing, or facilitating the manufacturing of asbestos products, or representing themselves as manufacturers of asbestos products, or are professional vendors of asbestos or asbestos-containing products, or as a contractor, which were expected to and did reach both Doris Pillette and Norris Pillette's job sites causing Doris Pillette to be exposed to them.

39.    The products manufactured, distributed, supplied, sold and/or used by these Defendants were defective, and unreasonably dangerous per se to Doris Pillette and her ex-husband, who were intended and foreseeable users and bystanders that were exposed to these products. These defects include, without limitation, the following:

A.    the manufacture, sale, supply and use of products that are unreasonably dangerous, or unreasonably dangerous per se;

B.    manufacture, sale, supply and use of products that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as respiratory disease, cancer, and other health

problems to those who would be foreseeably exposed to them doing the laundry and having contact with the clothing worn by Norris Pillette in his respective trades;

C.    lack of warning or of sufficient warning of the hazards these products would present in the course of their normal foreseeable use or intended use;

D.    lack of safety instructions or of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these products;

E.    failure of Defendants to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

F.    failure to test or adequately test these products for defects or hazards that they could present to the intended or foreseeable users and bystanders;

G.    failure to truthfully report or adequately report the results of product testing, and medical studies associated with foreseeable hazards of these products by intended or foreseeable users and bystanders;

H.    failure to prevent Plaintiff's ex- husband from taking dusty work clothes home;

I.    failure to properly design these products where the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available;

J.    defects in the composition and construction of these products;

K.    failure to recall these products manufactured, sold and supplied;

L.    failure to properly package these products so that they could be safely transported, handled, stored or disposed of;

M.    over-warranting the safety of these products;

N.    are liable to Plaintiff in strict liability for things in their guard, possession, custody or control, pursuant to article 2317 of the Louisiana Civil Code that have caused harm to Plaintiff.

40.    Defendants are liable to Plaintiff in strict liability for things in their guard, possession, custody or control, pursuant to article 2317 of the Louisiana Civil Code, that have caused harm to Plaintiff.

41.    The defective conditions of Defendants' products and fault, as noted above, are a cause of Plaintiff's injuries and damages complained of herein.

42.    Plaintiff also alleges that each and every one of the foregoing Defendants were also negligent in engaging in the substandard conduct enumerated above and that this negligence was also a proximate cause of Plaintiff's injuries.

## STRICT LIABILITY AND NEGLIGENCE OF PREMISE OWNERS

43.    Defendants identified as premise owners in Paragraph 2A above, are liable for Plaintiff's injuries caused by their fault, in the form of strict liability and/or negligence as detailed herein, and in failing to provide Norris Pillette, with a safe place to work free from the dangers of respirable asbestos-containing dust to which Plaintiff was subsequently exposed to.

44.    The Premise Defendants are liable to the Plaintiff for the damages described in this Petition for the following acts of negligence while Plaintiff and Plaintiff's ex-husband, Norris Pillette, worked within his respective work sites:

A.    Failing to provide respiratory protection to Doris Pillette Norris Pillette;

B.    Failing to provide safety equipment to Doris Pillette and Norris Pillette;

C.    Failure to provide general ventilation in Doris Pillette and Norris Pillette's work area(s);

D.    Failing to provide local exhaust in Doris Pillette and Norris Pillette's work area(s);

E.    Failing to provide air free from airborne asbestos fibers in Doris Pillette and Norris Pillette's work area(s);

F.    Failing to provide proper Doris Pillette and Norris Pillette with proper medical monitoring;

G.    Failing to educate Doris Pillette and Norris Pillette of the hazards of asbestos;

H.    Failing to post warning or caution signs regarding the hazards of asbestos;

I.    Failing to implement wet methods to control the level of airborne asbestos fibers in Doris Pillette and Norris Pillette's work area(s);

J.    Failing to implement the use of asbestos-free materials;

K.    Inducing Doris Pillette and Norris Pillette to work in areas polluted with respirable asbestos fibers.

L.    Failing to provide Doris Pillette and Norris Pillette with safe and proper laundry services to prevent him from taking work clothes covered in asbestos home, and;

M.    Failure to prevent Doris Pillette and Norris Pillette from taking dusty work clothes home.

45.    As a direct result of the aforementioned acts, Doris Pillette and Norris Pillette inhaled and otherwise ingested asbestos fibers from the asbestos and asbestos-containing products present during his work and as a direct result, Plaintiff contracted asbestos-related lung cancer complained of herein.

46.    During the course of Doris Pillette and Norris Pillette's work, she was exposed to asbestos and/or asbestos containing products, which were in the care, control and custody of these Defendants. Because of the extreme hazard it poses to humans, asbestos constitutes a defect or vice in the products to which Plaintiff was exposed, which defect or vice was a cause in fact of Plaintiff's injuries described herein. Accordingly, these Defendants are strictly liable to Plaintiff in accordance with Louisiana Civil Code articles 2315 and 2317.

47.    During the course of Norris Pillette's work, Plaintiff was exposed to asbestos released from these premises, which release was a cause in fact of Plaintiff's injuries described herein. Accordingly, The Premise Defendants are strictly liable to Plaintiff in accordance with, but not limited to, Louisiana Civil Code article 2315, former Louisiana Civil Code articles 660 and 669, and *Langlois v. Allied Chemical Corp*, 249 So.2d 133 (La. 1971).

48.    The Premise Defendants knew or should have known that asbestos posed a hazard to humans and that there were specific engineering and industrial hygiene controls that could help reduce the levels of airborne asbestos fibers, and nonetheless failed or suppressed, through silence, neglect or inaction, the truth regarding asbestos to Plaintiff so as to obtain an unjust advantage for themselves over and at the expense of Plaintiff or to cause loss or inconvenience to Plaintiff. This action or inaction by the Premise Defendants was a direct and proximate cause of the damages described herein.

## DAMAGES

49.    The conduct of all Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting from asbestos-related lung cancer and of Plaintiff, Doris Pillette, and of the following general and special damages including:

    A.    The conscious physical pain and suffering and mental anguish sustained by Petitioner (past, present and future);

    B.    The disfigurement suffered by Petitioner;

    C.    The physical impairment suffered by Petitioner (past, present and future);

    D.    Reasonable and necessary medical expenses incurred by Petitioner;

E.  All past, present and future lost earnings and loss of earning capacity;

F.  Loss of quality of life;

G.  All forms of relief or categories of damages allowed by Louisiana law for wrongful death claims, against parties the law allows such claims to be alleged against, with interest from the date of injury until paid, plus costs of these proceedings.

50.  Plaintiff demands trial by jury on all issues.

**WHEREFORE,** Petitioner demands judgment against the Defendants, and each of them, jointly, severally and/or *in solido* for all damages, for their costs expended herein, for judicial interest from the date of judicial demand, and for such other and further relief, both at law and in equity, to which Petitioner may show themselves justly entitled.

Respectfully submitted,

**BOLING LAW FIRM, LLC**

Jeremiah Boling (Bar No. 34249)
Caroline Boling (Bar No. 34494)
Adam Whitworth (Bar No. 34149)
Stephanie Frederick (Bar No. 36462)
Alaina Brandhurst (Bar No. 35057)
541 Julia Street, Suite 300
New Orleans, LA 70130
Telephone: (504) 569-5904
Fax: (504) 569-5774
jboling@bolingfirm.com
cboling@bolingfirm.com
awhitworth@bolingfirm.com
sfrederick@bolingfirm.com
abrandhurst@bolingfirm.com
**ATTORNEYS FOR PLAINTIFF**

**PLEASE SERVE THE FOLLOWING DEFENDANTS WITH A COPY OF PLAINTIFF'S PETITION FOR DAMAGES:**

**EXXON MOBIL CORPORATION**
Through its agent for service,
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**TURNER INDUSTRIES GROUP, LLC**
Through its agent for service,
John H. Fenner III -OR- Max Marx
8687 United Plaza Blvd.
Baton Rouge, LA 70809

**PHARMACIA, LLC**
Through its agent for service,
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**DOW CHEMICAL COMPANY**
Through its agent for service,
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**LEGACY VULCAN, LLC**
Through its agent for service,
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**ENTERGY LOUISIANA, LLC**
Through its agent for service,
John A. Braymer
446 North Blvd.
Baton Rouge, LA 70802

**AIR PRODUCTS AND CHEMICALS, INC.**
Through its agent for service,
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**EIDP, INC.**
Through its agent for service,
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**RUBICON LLC**
Through its agent for service,
Corporation Service Company
450 Laurel St., 8th Floor
Baton Rouge, LA 70801

**TEXACO, INC.**                                      **LONG ARM SERVICE**
Through its agent for service,
CSC-Lawyers Incorporating Service
2710 Gateway Oaks Dr., Ste. 150N
Sacramento, CA 95833

**SHELL OIL COMPANY**
Through its agent for service,
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**EAGLE, INC. (F/K/A EAGLE ASBESTOS & PACKING CO., INC.)**
Through its agent for service,
Susan B. Kohn
1100 Poydras Street, 30th Floor
New Orleans, LA 70163

**TAYLOR SEIDENBACH, INC.**
Through its agent for service,
Hal Shepard
731 South Scott Street
New Orleans, LA 70119

**ANCO INSULATIONS, INC.**
Through its agent for service,
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**CLEAVER-BROOKS, INC. F/K/A AQUA-CHEM, INC.**          **LONG ARM SERVICE**
Through its agent for service,
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

**ZURN INDUSTRIES, LLC**
Through its agent for service,
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**RILEY POWER INC.**
Through its agent for service,
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**GOULDS PUMPS (IPG), INC.**
Through its agent for service,
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**UNION CARBIDE CORPORATION**
Through its agent for service,
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**ITG BRANDS, LLC**
Through its agent for service,
Corporation Service Company
450 Laurel Street, 8th Floor
Baton Rouge, LA 70801

**R.J. REYNOLDS TOBACCO COMPANY**
Through its agent for service,
Corporation Service Company
450 Laurel Street, 8th Floor
Baton Rouge, LA 70801